# In the United States Court of Federal Claims

No. 17-876C
(Filed: October 22, 2018)

|  |  |  |
|---|---|---|
| PETERSON INDUSTRIAL DEPOT, INC., et al., | ) ) ) | Breach of Contract; Motion to Dismiss for Lack of Subject Matter |
| Plaintiffs, | ) ) | Jurisdiction; Motion to Dismiss for Failure to State a Claim; RCFC |
| v. | ) ) | 12(b)(1); RCFC 12(b)(6); Incorporation by Reference; FTCA; |
| THE UNITED STATES, | ) ) | Third-Party Beneficiary; Gross Negligence; Good Faith and Fair |
| Defendant. | ) ) ) | Dealing; Contract Interpretation; Standing. |

*James D. Gilson*, Salt Lake City, UT, for plaintiffs.

*Borislav Kushnir*, Civil Division, U.S. Department of Justice, Washington, D.C., with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.,* Director, and *Franklin E. White, Jr.*, Assistant Director, for defendant. *Maj. Collin P. Evans*, U.S. Army Legal Services Agency, Fort Belvoir, VA, of counsel.

## O P I N I O N

Now pending before the court is the United States' (the "government") motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") this breach of contract case brought by plaintiffs Peterson Industrial Depot, Inc. ("PID") and Rocky Maintain Rail Car & Repair, LLC ("RMRR"). The plaintiffs filed this action on June 27, 2017, seeking damages for an alleged breach of contract (including a breach of the implied covenant of good faith and fair dealing) and for gross negligence in connection with the United States Army's alleged failure to properly maintain certain rail lines at the Tooele Army Depot

("TEAD"), in Utah. *See* Compl. at ¶¶ 56-66 (ECF No. 1). Plaintiffs seek damages of

not less than $1,000,000. *Id.* at 14. For the reasons described below, the government's

motion to dismiss is **GRANTED**.[1]

## I.      Factual Background

### A.  The PID Contract

On October 31, 2014, PID, entered into a "Contract of Sale" (the "Contract")

with the United States Army (the "Army"), in which TEAD agreed to "[p]rovide short

rail line services to PID," including the equipment and crew necessary for picking up

rail cars at TEAD's entrance and spotting them along TEAD's railroad tracks. Compl.

at Ex. 1, ¶¶ 1-2 (ECF No. 1). PID agreed to pay an estimated annual cost of $300,000

for use of TEAD's rail equipment and services with all payments to be deposited into a

fund. *Id.* at Ex. 1 ¶¶ 3-4. ). The Contract included an indemnification provision that

stated "[t]he buyer agrees to hold harmless and indemnify the U.S. Government, except

in a case of willful misconduct or gross negligence, from any claim for damages or

injury to any person or property arising out of the article or service." *Id.* at Ex. 1 ¶ 8.

Additionally, the Contract provided that "[a]ny articles furnished under this contract

will be provided on a where is, as is basis." *Id.* at Ex. 1 ¶ 9. PID also agreed that it

could not assign its rights and responsibilities under the Contract "without the prior

written consent" of the U.S. Government.  *Id.* at Ex. 1 ¶ 11. Aside from PID, no other

---

[1] A companion case filed by Jade Street Enterprises, LLC and PID on May 13, 2015 was recently dismissed. *Peterson Industrial Depot, Inc. v. United States*, No. 15-490C 2016 WL 53179 (Fed. Cl. Feb. 11, 2016). The court has determined that an oral argument in this case is not necessary.

corporate entity is mentioned in the Contract. *See generally id.* at Ex. 1.

Section 12 of the Contract provided that "[a]ny terms and conditions relating to the above sale, not contained herein, shall be null and void, unless changed by subsequent agreement in writing." *Id.* at Ex. 1 ¶ 12. The final section of the Contract, Section 14, stated:

> All parties recognize their responsibility to comply with all applicable federal laws, executive orders, rules and regulations applicable to a federal installation during the performance of this Agreement including, but not limited to, the following: Occupational Safety and Health Act of 1970, as amended (OSHA); the Toxic Substances Control Act, as amended (TSCA); the Clean Air Act (CAA); the Clean Water Act (CWA); the Resource Conservation and Recovery Act (RCRA); etc.

Compl. at Ex. 1, ¶ 14 (ECF No. 1). Nowhere in the Contract are statutes or regulations relating to rail safety or track maintenance expressly identified. *See generally id.* at Ex. 1. In addition, it is not disputed that neither the February 13, 2008 Department of Defense ("DOD") Unified Facilities Criteria ("UFC") – Railroad Track Maintenance & Safety Standards, the December 2009 report entitled "Railroad Track Inspection and Repair Recommendations, Tooele Army Depot, Utah" ("2009 Report"), nor the January 2015 report entitled "Railroad Track Inspection and Repair Recommendations, Tooele Army Depot, Utah" ("2015 Report") which the plaintiffs rely on to support their breach of contract claims are expressly identified in the Contract. *See* APPX1; APPX108; APPX315.

The UFC establishes "maintenance standards" that "define the minimum required maintenance condition levels for railroad track." APPX8 at § 1-4(a); Compl.

at ¶¶ 12-13.[2] The above-mentioned 2009 Report was issued by the United States Army

Engineer Research and Development Center ("ERDC") following an on-site inspection

and assessment of railroad facilities at TEAD. APPX117; Compl. at ¶ 16 (ECF No. 1).

The 2009 Report contains a variety of recommendations for the repair and maintenance

of various TEAD facilities and installations.  *See* APPX168; Compl. at ¶ 21.

In June of 2014, ERDC performed another on-site assessment of the railroad

facilities at TEAD and published the 2015 Report. Similar to the 2009 Report, the

2015 Report also contains various recommendations for the repair and maintenance of

facilities and installations within TEAD.  *See* APPX371; Compl. at ¶ 28.

### B. The Alleged Derailments

Plaintiffs allege that several incidents occurred after the Army began providing

short rail services to PID.  First, plaintiffs allege that 15 railcars were derailed on

December 14, 2014. Compl. at ¶ 35.  Second, plaintiffs allege that several railcars were

derailed on September 8, 2015.  *Id.* at ¶ 46.  Third, plaintiffs allege that runaway rail

cars caused a collision on October 5, 2015.[3]  *Id.* at ¶ 53. According to plaintiffs, all

three incidents occurred as a result of the Army's alleged failure to follow the

---

[2] In publishing the UFC, DOD stated the UFC was intended: (1) "to protect  investments in track maintenance and rehabilitation;" and (2) "to ensure that DOD's railroad  track is maintained at the level needed to support mission requirements."  APPX8 at § 1-1(b).

[3] Plaintiffs do not allege that either PID or RMRR owned the railcars allegedly damaged during the first derailment, the second derailment, or the railcar runaway incident.  *See generally*  Compl. (ECF No. 1).

standards set by the UFC and failure to implement the recommendations identified in the 2009 Report, and the 2015 Report. *See id.* at ¶¶ 36, 47, 53, 58-59.

## II.     Procedural Background

As noted above, plaintiffs filed this action on June 27, 2017, seeking damages for: (1) an alleged breach of contract by the government for failing to comply with the UFC standards and 2009 and 2015 reports; (2) for an alleged breach of the implied covenant of good faith and fair dealing; and (3) for gross negligence.  *See* Compl. at ¶¶ 56-66. The government argues that the plaintiffs cannot maintain a claim for breach of contract based on the above-described UFC standards and the 2009 and 2015 Reports on the grounds that the cited UFC standards and ERDC reports are not money-mandating. The government also argues that because the standards and reports were not incorporated into PID's Contract with TEAD the plaintiffs cannot state a claim for breach of contract based on alleged violations of those standards and reports. The government further argues that plaintiffs cannot state a claim for breach of the duty of good faith and fair dealing on the grounds that the Contract contains a "where is, as is" clause which placed the risk of any loss, including losses due to derailments or collisions, on the plaintiffs. Additionally, the government argues that plaintiffs' gross negligence claim must also be dismissed for lack of jurisdiction on the ground that the claim sounds in tort and is thus outside this court's Tucker Act jurisdiction. The government argues that RMRR must be dismissed from the litigation for lack of standing on the grounds that it is not in privity of contract with the government.

In their response, the plaintiffs acknowledge that the UFC standards and the ERDC 2009 and 2015 Reports which they rely upon for their breach of contract claim are not themselves money mandating and thus cannot support an independent breach of contract claim. *See* Pls.' Opp'n at 3 (ECF No. 7)  Rather, plaintiffs  maintain that their breach of contract claims are based on their contention that the UFC standards and requirements set forth in the ERDC Reports were incorporated by reference into the Contract through paragraph 14. The plaintiffs also agree that this court does not have jurisdiction over claims for gross negligence outside of a contract context. They argue, however, that they are not seeking damages sounding in tort but instead are seeking breach of contract damages based on the government's gross negligence in failing to properly maintain the railroad tracks under the above-referenced standards.

In view of these concessions, the court finds that the now pending motion to dismiss requires the court to resolve the following four issues: (1) whether plaintiffs have stated a claim for breach of contract based on the government's alleged failure to comply with the UFC standards and ERDC reports referenced by plaintiffs; (2) whether plaintiffs have stated a claim for breach of contract based on a breach of the duty of good faith and fair dealing; (3) whether the plaintiffs have stated a claim for breach of contract based on an allegation of gross negligence and (4) whether RMRR has standing to bring a breach of contract claim against the government.

### III.    DISCUSSION

#### A.  Standards of Review under RCFC 12(b)(1) and 12(b)(6)

First, in ruling on a motion to dismiss pursuant to Rule 12(b)(1), the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  "When a federal court reviews the sufficiency of a complaint . . . its task is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Specifically, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*

Second, it is well-settled that a complaint should be dismissed under Rule 12(b)(6), "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss under this Rule 12(b)(6), the court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). But legal conclusions and conclusory statements are "not entitled to the presumption of truth." *Id.* "To avoid dismissal for failure to state a claim under RCFC 12(b)(6), a complaint must allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief." *Kam-Almaz v. United States*, 682 F.3d 1364, 1367 (Fed. Cir. 2012). In other words, "[t]he facts as alleged must be enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1367-8

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

> **B. Plaintiffs Have Failed to State a Breach of Contract Claim Based on Incorporation by Reference of the UFC Standards and ERDC Reports.**

The Tucker Act allows this court "to render judgment upon any claim against

the United States founded . . . upon any express or implied contract with the United

States." 28 U.S.C. § 1491(a)(1). "To recover for breach of contract, a party must

allege and establish: (1) a valid contract between the parties, (2) an obligation or duty

arising out of the contract, (3) a breach of that duty, and (4) damages caused by the

breach." *San Carlos Irr. and Drainage Dist. v. United States*, 877 F.2d 957, 959

(Fed. Cir. 1989). As this court has previously stated, "there is a minimum burden for a

plaintiff, in asserting a breach of contract claim, to explicitly identify the provisions

and terms of the contract that have been breached." *Gonzalez-McCaulley Inv. Grp.,*

*Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010).

Plaintiffs do not allege that the Army breached any standards or requirements

expressly found within the four corners of the Contract. Rather, they allege that the

Army breached the Contract by failing to comply with standards and reports which

they contend were incorporated by reference into the Contract under Paragraph 14 of

the Contract.[4] *See* Compl. at ¶¶ 58-59. To prevail against the government, the

---

[4] The plaintiffs have not attached the UFC, the 2009 Report, nor the 2015 Report to their complaint. The court, however, is "not limited to the four corners of the complaint" and may consider materials incorporated by reference when deciding a motion to dismiss. *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2461 (2016). Where, as here, the standards and reports relied upon by plaintiffs to support their allegations

plaintiffs must demonstrate that these extrinsic documents can give rise to a breach of

contract claim under the Contract. While the plaintiffs contend that these standards

and reports were incorporated by reference under Paragraph 14 of the Contract, the

government argues that the standards and reports were not incorporated by reference

and therefore cannot support a breach of contract claim.

As noted above, Paragraph 14 of the Contract states as follows:

> All parties recognize their responsibility to comply with all applicable
> federal laws, executive orders, rules and regulations applicable to a
> federal installation during the performance of this Agreement including,
> but not limited to, the following: Occupational Safety and Health Act of
> 1970, as amended (OSHA); the Toxic Substances Control Act, as
> amended (TSCA); the Clean Air Act (CAA); the Clean Water Act
> (CWA); the Resource Conservation and Recovery Act (RCRA); etc.

Plaintiffs claim that the "all parties recognize" language in Paragraph 14

required the Army to comply with all of the regulations and standards set in the UFC

together with the various recommendations made in the ERDC 2009 and 2015

Reports. The government argues in its motion to dismiss that plaintiffs reading of

Paragraph 14 is not supported and that the UFC standards, the 2009 Report, nor 2015

Report have been incorporated by reference into the Contract. Relying principally on

*St. Christopher Associates, L.P. v. United States*, 511 F.3d 1376, 1384 (Fed. Cir.

2008) and *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344

(Fed. Cir. 2008), the government argues that unless there is explicit language

incorporating a statute or regulations into a contract, the court will not import into a

---

of breach of contract are referenced and integral to understanding the breach claims, the
standards and reports may be considered by the court. *Id.*

contract terms outside of the contract. Here, the government argues that the language of Paragraph 14 which only states that the parties "recognize" their obligations under various federal laws coupled with the absence of any mention of the subject UFC standards or ERDC Reports is fatal to plaintiffs' attempt to state a breach of contract claim based on the Army's alleged failure to meet the standards identified in the referenced documents.

The court agrees with the government that the UFC standards, the 2009 Report, and the 2015 Report are not incorporated by reference to the Contract. "Incorporation by reference is a question of law." 535 F.3d at 1343. In this connection, the Federal Circuit has established a clear test for determining whether a contract incorporates by reference external sources of law and regulatory requirements. The Federal Circuit in *Northrop* held that "the incorporating contract must use language that is *express* and *clear*, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract." *Northrop*, 535 F.3d at 1344. (emphasis in original). This means that "the language used in a contract to incorporate extrinsic material by reference [1] must explicitly, or at least precisely, identify the written material being incorporated and [2] must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, *e.g.*, as background law or negotiating history)." *Id.* at 1345. Indeed, the Federal Circuit has long avoided creating a "wholly new ground of obligation . . . by mere implication" in contracts.

*Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988) (quoting *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 1010 (Ct. Cl. 1967)). Here, the court finds that plaintiffs cannot meet the Federal Circuit's two-prong test for incorporation by reference.

First, there is nothing in the Contract or Paragraph 14 of the Contract that explicitly nor precisely identifies the UFC, the 2009 Report, or the 2015 Report. *See* Compl. at Ex. 1. The Federal Circuit has expressly held that a general reference to applicable laws, without a more precise reference to the standards alleged to be at issue, is insufficient to incorporate these external documents into a contract. *Northrop*, 535 F.3d at 1344; *See also St. Christopher Ass'n.*, 511 F.3d at 1384 (holding that the court "cannot conclude that the Regulatory Agreement incorporates 24 C.F.R. § 245.325(b) or HUD Handbook section 7–25 by implication" because "there is no reference whatsoever in the Regulatory Agreement to the implementing regulations or to the HUD Handbook."). In *Northrop*, the plaintiff claimed that the United States "breached a warranty [] allegedly contained in the Letter of Essential Need" related to a software purchase." 535 F.3d at 1341. The plaintiff argued that this "Letter of Essential Need" was incorporated by reference as a contract term in the leasing terms and conditions. *Id.* at 1346. The leasing terms and conditions stated "[i]t is hereby mutually understood and agreed that as inducement for Contractor entering into this Agreement, *the government has provided required information relative to the essential use of the software Asset* which includes, but is not limited to, a description of the

currently identified applications to be supported and planned life-cycle operations for the leased software." *Id.* (emphasis added by Circuit). The Federal Circuit rejected the plaintiff's claim because the leasing terms and conditions did "not refer to the Letter of Essential Need explicitly, as by title or date, or otherwise in any similarly clear, precise manner." *Id.* In this case, the Contract only makes a general reference to "all applicable federal laws, executive orders, rules and regulations applicable to a federal installation during the performance of this Agreement." *Id.* at ¶ 14. These general references do not explicitly, as by title or date, or otherwise in any similarly clear, precise manner reference the UFC, the 2009 Report, or the 2015 Report. Therefore, like the court in *Northrop* which rejected incorporating the Letter of Essential Need, this court must reject incorporating the UFC, the 2009 Report, and the 2015 Report into the Contract.

Contrary to the plaintiffs' contentions, this court's rejection of plaintiffs' argument is consistent with case law following *Northrop*. In cases where an agreement explicitly names a document, regulation, or statute, the incorporation is upheld. *See Cal. by and through Yee v. United States*, 135 Fed. Cl. 718, 733 (2017) ("Thus, the Agreement unambiguously incorporated 43 C.F.R. Subpart 12(A) into the Agreement by making several explicit references to '43 C.F.R. 12(A)'"); *Pub. Hous. Auth.'s Dir. Ass'n v. United States*, 130 Fed. Cl. 522, 532 (2017) (holding that Housing and Urban Development Regulations at Title 24 of the Code of Federal Regulations are expressly incorporated because "section 5 of the [contracts] specifies that the parties must comply with the regulations 'promulgated by HUD at Title 24 of the Code of Federal

Regulations, which are hereby incorporated into this [contract] by reference'"). However, in cases where the agreement does not include the name, date, or other similarly explicit references of an external source, the court has not incorporated that source into a contract. *Land of Lincoln Mut. Health Ins. Co. v. United States*, 129 Fed. Cl. 81, 109-10 (2016) *aff'd* 892 F.3d 1184 ( Fed. Cir. 2018) ("the general reference to federal law and HHS regulations does not expressly or clearly incorporate the specific risk-corridors provisions" within those regulations); *Dobyns v. United States*, 118 Fed. Cl. 289, 315 (2014) (*Dobyns II*) (rejecting the "wholesale incorporation plaintiff desires" that  "laws regarding or otherwise affecting the Employee's employment" were precise enough to include Bureau of Alcohol, Tobacco, Firearms and Explosives Orders).

In view of the foregoing precedent, plaintiffs reliance on *Dobyns v. United States*, 91 Fed. Cl. 412 (2010) (*Dobyns I*) is misplaced. *Dobyns I* was a 2010 preliminary order that rejected the United States' argument that the language "all laws regarding or otherwise affecting [the plaintiff's employment] by the Agency" was too broad to be enforced. *Id.* at 420 ("Nor is the clause in question too general to be enforced."). In *Dobyns II*, after trial, the same court expressly recognized that that the obligation to comply with all laws in that contract did not go so far as to incorporate specific agency guidance. 118 Fed. Cl. at 315. Here, plaintiffs are claiming that specific agency Reports and the UFC were incorporated by reference. There is no legal support for plaintiffs' contention.  Indeed, as noted above, the Federal Circuit has

expressly found that even the incorporation of specific agency regulations without express reference is problematic because, "wholesale incorporation of regulations into a contract would allow the contracting party to choose among a multitude of regulations as to which he could claim a contract breach—and thus a wholly new ground of obligation would be summarily created by mere implication." *St. Christopher Associates, L.P.,* 511 F.3d at 1384.

Second, the court agrees with the government that the Contract does not clearly communicate in Paragraph 14 that the reference to "all applicable laws" was even intended to incorporate any specific regulations. The Federal Circuit has held that incorporation does not require the use of "magic words," but has admonished parties who intend to incorporate external sources of law to use "widely-used and judicially-approved language of incorporation, such as 'is hereby incorporated by reference' or 'is hereby incorporated as though fully set forth herein.'" *Northrop Grumman Info. Tech.*, 535 F.3d at 1346. Here, the Contract merely states that "all parties recognize their responsibility to comply with" applicable laws. Compl. at Ex. 1, ¶ 14. This general "recognition" of other laws does not express a purpose to incorporate these specific regulations or recommendations into the Contract. *See Pub. Hous. Auth. Dir. Ass'n* 130 Fed. Cl. at 534 ("The relevant precedent confirms that contract language stating that a party's obligations shall be governed by or subject to 'applicable statutes' is not sufficient to evince the incorporation of any particular statute into the contract by reference.").

In sum, plaintiffs' breach of contract claim in Count I to the extent it is based on

their contention that the UFC standards and recommendations set forth in the ERDC 2009 and 2015 Reports were incorporated by reference into the Contract fails to state a claim.

### C. Plaintiffs' Claim For Breach of the Implied Duty Of Good Faith and Fair Dealing Must Be Dismissed for Failure to State a Claim.

Plaintiffs assert that their breach of contract claim in Count I also includes a claim based on the implied duty of good faith and fair dealing. *See* Compl. at ¶ 6. Plaintiffs allege that the Army breached this implied duty by "failing to maintain the tracks and operate on the tracks in a safe and workmanlike manner so as to not endanger Plaintiffs' property while facilitating the efficient and effective movement of Plaintiffs' rail cars." *Id.* at ¶ 61.

The implied duty of good faith and fair dealing "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). "The duty [of good faith and fair dealing] applies to the government just as it does to private parties." *Id.*

The Federal Circuit has held that "a breach of the *implied* duty of good faith and fair dealing does not require a violation of an *express* provision in the contract." *Metcalf Const. Co., Inc. v. United States*, 742 F.3d 984, 994 (Fed. Cir. 2014) (emphasis in original). As such, the Federal Circuit has treated express duties and implied duties as separate obligations. In *Agility Public Warehousing Company KSCP v. Mattis*, 852

F.3d 1370, 1384-85 (Fed. Cir. 2017) the Federal Circuit remanded a case to the Armed

Services Board of Contract Appeals because the Board failed to separately consider

claims based on the implied duty of good faith and fair dealing. The Federal Circuit has

also made clear, however, that "a party to a contract cannot use an implied duty of good

faith and fair dealing to expand another party's contractual duties beyond those in the

express contract or create duties inconsistent with the contract's provisions." *Id.* at

1384 (citing *Metcalf Const.*, 742 F.3d at 991).  "[A]n act will not be found to violate

the duty (which is implicit in the contract) if such a finding would be at odds with the

terms of the original bargain, whether by altering the contract's discernible allocation

of risks and benefits or by conflicting with a contract provision." *Metcalf Const.*, 742

F.3d at 991. Put another way, contractors with the government "cannot rely on the

implied covenant of good faith and fair dealing to change the text of their contractual

obligations." *Century Exploration New Orleans LLC v. United States*, 745 F.3d 1168,

1179 (Fed. Cir. 2014).

Under the terms of the Contract, PID and the Army agreed that the Army would

provide short rail line services in exchange for an estimated annual cost of $300,000.

Compl. at Ex. 1, ¶¶ 1-3 (ECF No. 1). The Contract provides that PID and the Army

agreed that any "articles provided" in connection with the short rail line services "will

be provided on a where is, as is basis."  *Id.* at Ex. 1 ¶ 9.  The government argues that

because the parties agreed that the rail services would be provided on a "where is, as

is" basis the Army did not promise that the tracks would be maintained to any specific

standard or that the army was guaranteeing a specific level of service and further that

PID assumed the risk of any loss associated with the provision of rail services. In support of it arguement, the government relies on several cases from this court. *See Barstow Truck Parts & Equip. Co., Inc. v. United States*, 5 Cl. Ct. 224, 226 (1984) ("The very nature of the ["as is, where is"] clause notifies the prospective purchaser that he bears the risk of loss."); *see also Commodities Recovery Corp. v. United States*, 34 Fed. Cl. 282, 292 (1995) (stating that even though where is, as is clauses "may appear to place a harsh risk of loss upon the buyer . . . [they] uniformly[] have been upheld by federal courts") (citation omitted). The government argues that plaintiffs' attempt to transfer the risks associated with the alleged lack of track maintenance (*see* Complaint ¶¶ 35-39 and 46-50), and for negligently attempting to re-rail cars without the proper equipment (*see* Complaint ¶¶ 40-44 and 53) from PID to the government would change the terms of the Contract and would expand the Army's contractual duties beyond the terms Contract, contrary to law established by the Federal Circuit in *Metcalf. See Metcalf Const.*, 742 F.3d at 991.

Plaintiffs agree that they cannot alter the Contract's allocation of risks and benefits or add obligations that are contrary to the Contract's terms. *See generally* Pls. Opp'n at 7-8. The plaintiffs, however, dispute that the "where is, as is" clause within the Contract allocates the risk of loss to PID and thus, the plaintiffs are not adding obligations contrary to the Contract's terms. The plaintiffs argue that the "where is, as is," term "does not relate to the parties' relative exposure to liability." *Id.* at 8. In support plaintiffs cite to the Contract's indemnification provision (*see* Complaint Ex. 1 ¶ 8), which, they argue, limits the allocation of risk to PID.  *See* Pls. Opp'n at 8 (ECF

No. 7).

The government argues in response that the plaintiffs' reliance on the indemnification provision is without merit because it addresses PID's obligations to indemnify the government – except in circumstances involving "gross negligence." By its terms, the government argues, the Contract does not authorize PID to seek indemnification from the government in the event PID is found liable for actions under the contract. The indemnification term states "[t]he buyer agrees to hold harmless and indemnify the U.S. Government, except in a case of willful misconduct or gross negligence, from any claim for damages or injury to any person or property arising out of the article or service." Complaint Ex. 1 ¶ 8.

The government also argues that plaintiffs' reliance on a recent decision from this court, *Spectre Corporation v. United States*, 132 Fed. Cl. 626 (2017), is misplaced. *Spectre*, the government argues, did not involve a "where is, as is" provision and thus is not relevant to this case. The government argues that because the government expressly disclaimed any risk in the Contract through the "where is, as is" provision that PID understood that it was assuming the risk and the court must reject the plaintiffs' effort to alter the allocation of risks and benefits.

The court agrees with the government that plaintiffs cannot state a claim for a breach of the duty of good faith and fair dealing given the "where is, as is" provision of the Contract. Further, the court agrees with the government that the indemnification clause does not negate the "where is, as is" provision in the Contract. While every

contract includes the implied duty of good faith and fair dealing, what that duty entails depends on what the contract promised or disclaimed. *Precision Timber v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). It is well-settled that a "where is, as is clause" places the risk of loss associated with the services offered on the buyer. *See e.g.*, *Barstow Truck Parts & Equip. Co., Inc.* 5 Cl. Ct. at 226 ("The very nature of the clause notifies the prospective purchaser that he bears the risk of loss"). Here, the Contract disclaimed the very duty plaintiffs claim was breached. In such circumstance, plaintiffs cannot state a claim for breach of contract claim based on a breach of the duty of good faith and fair dealing.

### D.  The Court Lacks Jurisdiction To Entertain Plaintiffs' Gross Negligence Claim Separate From A Contract Claim

The Tucker Act grants this Court jurisdiction "in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  However it "is well established that where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims to the extent that damages exceed $10,000." *See Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002); *Bird & Sons, Inc. v. United States*, 420 F.2d 1051, 1054 (Ct. Cl. 1970) ("[W]here an alleged 'negligent' act constitutes a breach of a contractually created duty, the Tucker Act does not preclude relief.").

The government argues that because plaintiffs' claims do not arise out of a contractual duty, any failure of the government to comply with the UFC standards or the ERDC 2009 and 2015 Reports can only give rise to a tort claim under the Federal Tort

19

Claims Act ("FTCA"). *See Agredano v. United States*, 595 F.3d 1278, 1281 (Fed. Cir.

2010) (holding that if the "source of any responsibility on the part of [the government] .

. . is its regulatory function" that "failure to adequately perform this responsibility does

not provide a contractual remedy"). As such, the government argues that the plaintiffs'

claim based on gross negligence is outside this court's jurisdiction. *See Lewis v. United*

*States*, 83 F. Supp. 3d 198, 209 (D.D.C. 2015), *aff'd*, Case No. 15-5100, 2015 WL

9003971 (D.C. Cir. Oct. 30, 2015) (noting that, under certain circumstances, "negligent

non-performance of a duty created by a federal regulation can give rise to an FTCA

claim").

The court agrees with the government. Having concluded that the government did

not have a duty under the UFC standards or the ERDC 2009 and 2015 Reports to

maintain the rail tracks or provide services in a particular fashion, the government's

gross negligence in maintaining the tracks or in providing services, if true, can only give

rise to a tort claim under the FTCA. As such, plaintiffs' claim based on gross negligence

is outside this court's jurisdiction under the Tucker Act.

### E.  IV.RMRR Lacks The Requisite Standing To Sue The United States

Although for the reasons set forth above plaintiffs' case must be dismissed for

failure to state a claim, RMRR must be dismissed from this case in the first instance for

lack of standing. "[T]o have standing to sue the sovereign on a contract claim, a

plaintiff must be in privity of contract with the United States." *P. Gas and Electric Co.*

*v. United States*, 838 F.3d 1341, 1350 (Fed. Cir. 2016).  As such, "[t]he [G]overnment

consents to be sued *only* by those with whom it has privity of contract." *Erickson Air*

*Crane Co. of Washington, Inc.v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984)
(emphasis added); *see also Coggeshall Dev. Corp. v. United States*, 23 Cl. Ct. 739, 742
(1991) ("Absent privity of contract, plaintiffs may not advance their claim against the
government."). There is no dispute that RMRR is not in privity of contract with
government. Rather, RMRR argues that it is a third party beneficiary to the Contract
and has standing on that ground.

One exception to the privity requirement is to "allow [for] suit against the
government by an intended third-party beneficiary despite the lack of privity." *Flexfab,
L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005). "In order to prove third-
party beneficiary status, a party must demonstrate that the contract not only reflects the
express or implied intention to benefit the party, but that it reflects an intention to
benefit the party directly." *Id.* at 1259. A contract may establish third-party beneficiary
status by either specifically identifying the intended beneficiary or naming a class of
intended beneficiaries. *Id.* at 1260. Third-party beneficiary status is an "exceptional
privilege" that "should not be granted liberally." *Id.* at 1259 (citing *German Alliance
Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912)).

Here, the government argues and the court agrees the Contract expressly states
that it will "[p]rovide short rail line services to PID," and that any assignment of PID's
rights or interests under the Contract would be subject to the Army's prior written
consent. Compl. Ex. 1 at ¶ 1, 11. Taken together, these express contract terms
demonstrate that PID and the Army did not intend to directly benefit any third-party.
Plaintiffs have made no effort to address or explain these contract terms in their

response to the government's memoranda. *See generally* Pls. Opp'n at 10-13.  The court agrees with the government's reading of the Contract that RMRR is not an intentional third-party beneficiary. In addition, the court takes from the plaintiffs' lack of response that plaintiffs have no response to the plain language of the Contract. Accordingly, the court finds that the Contract expressly precludes finding that RMRR is a third-party beneficiary to the Contract and thus RMRR does not have standing.

## CONCLUSION

The government's motion to dismiss is **GRANTED**. The court finds that that for the reasons stated above, PID failed to state a claim for breach of contract or breach of the implied duty of good faith and fair dealing. The court also finds that it lacks jurisdiction to hear plaintiffs' claim under gross negligence. Finally, the court finds that plaintiff RMRR will be dismissed from this case for lack of standing. The Clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge